# EMERSON-BRANTINGHAM IMPLEMENT COMPANY, a Corporation, Respondent, v. JOHN BUSCH, Appellant.

### (175 N. W. 201.)

**Sales — rescission of part of contract.**

In an action to foreclose a chattel mortgage on a tractor and other machinery, where it appeared that the tractor was sold under parol representations and warranties which were not embraced within the written order, and where the written order expressly negatived warranties, the purchaser being induced to sign it by misrepresentations of agents, who stated that it contained the warranties agreed upon, and where the duplicate order intended for the purchaser was delivered to him but immediately retaken by the agent under the pretext that it was needed for convenience in checking the goods on arrival, and where the purchaser made a claim for damages for loss of time and expenses incurred by reason of the failure of the tractor to perform as warranted, which claim was settled in full for $200 and upon the additional understanding that the tractor would be put in working order, and where the evidence shows that the tractor did not comply with the warranties,—that it was never put in working order, and that by reason thereof the consideration for the defendant's notes as represented by the price of the tractor had failed, except to the extent that he had been benefited by its use, it is *held:*

1. That the contract of purchase, in so far as it relates to the tractor, should be rescinded and the .defendant's obligations to that extent reduced, and that defendant should have judgment for the payments made and for his damages as agreed on.

**Sales — settlement of claims — release.**

2. Upon the settlement of a claim for damages incident to the failure of a tractor to work as warranted, where the written portion of a receipt signed by the purchaser expressly states that it is "for damages and lost time in full," and the printed portion, not read by the purchaser, embraces also a release of all claims and all warranties, the testimony showing that the latter was no portion of the agreement of the parties, the receipt or release does not bar the defendant from reliance upon the warranties.

Opinion filed July 16, 1919.

Appeal from the District Court of Logan County, *W. L. Nuessle,* J. Reversed and remanded.

*A. B. Atkins* and *W. S. Lauder,* for appellant.

The law will not permit a corporation or an individual to reap the fruits of the fraudulent acts of its or his employees. That is exactly what plaintiff is attempting to do in this action. Altman v. Olson, (Minn.) 26 N. W. 451, and cases cited. Maxfield v. Schwartz, 47 N. W. 448; Ward v. Speltz, 58 N. W. 426; Woodbridge v. DeWitt, 70 N. W. 506; Strand v. Griffith, 97 Fed. 854; Chamberlain v. Fuller, 59 Vt. 256; Wardner v. Whitish, 46 N. W. 540; Davis v. Parker, 103 Mass. 501; Holland v. Anderson, 38 Mo. 55; Albany v. Burdick, 87 N. Y. 40; Bennett v. Judson, 21 N. Y. 238; Mundorff v. Wickersham, 63 Pa. 87; Keough v. Leslie, 92 Pa. 424.

Plaintiff, having elected to retain the fruits of the fraud, is responsible for it. Granger v. Mangam, 93 N. Y. 642; Bennett v. Judson, 21 N. Y. 238; Sanford v. Hanley, 23 Wend. 268; Krumm v. Beach, 96 N. Y. 298; United States v. Davis, 2 Hill, 452; Mecham, Agency, § 739; Insurance Co. v. Minch, 53 N. Y. 149.

The rule that parol evidence is incompetent to change or vary the terms of a written contract, or the other rule, that "all prior or contemporaneous oral negotiations are presumed to have been incorporated in the writing," has no application where the question involved is, "Was the contract itself procured by fraud?" Gilbert Co. v.

Bryan, 39 N. D. 113, 166 N. W. 805; DeRue v. McIntosh, — N. D. —, 127 N. W. 34; Erickson v. Wiper, 33 N. D. 193, and cases cited; Gustafson v. Rustemeyer, 39 L.R.A. 644; State v. Cass, 19 Atl. 972; Eaton v. Eaton, 35 N. J. L. 290; Sanford v. Hanley, 23 Wend. 265; Mallory v. Leach, 35 Vt. 154; Dane v. Sessions, 26 Atl. 585; Warner v. Landis, 20 Atl. 950; Pierce v. Woodward, 23 Mass. 206; Bussick v. Van Ness, 44 N. J. Eq. 82, 12 Atl. 609; Collins v. Tillon, 68 Am. Dec. 398; Dale v. Gear, 9 Am. Rep. 353; Belden v. Seymour, 21 Am. Dec. 661; Baldwin v. Sastle, 42 Am. Dec. 735; Cummings v. Cass, 52 N. J. L. 77.

It is immaterial whether the agents, Brost & Lee, knew when the warranty was given that it was false. If they warranted the machinery without knowing that the warranty was true, the warranty was a fraudulent one. 2 Rev. Codes, § 3848; Krause v. Bussacker, 81 S. W. 406; Gotzhauser v. Simon (Wis.) 1 N. W. 473; Saudners v. Michaels, 50 N. W. 507; Beetle v. Anderson, 73 N. W. 560; Gunther v. Ulrich, 52 N. W. 88; Davis v. Nozum, 40 N. W. 497; Middleton v. Jardee, 40 N. W. 629; Kinnon v. Volmar, 43 N. W. 800; Bird v. Kliner, 41 Wis. 134.

It is no defense to an action for deceit, to allege that if the party complaining had been less credulous or more keen in the given transaction, the fraudulent statements or representations would not have deceived him. Strand v. Griffith, 97 Fed. 854, with cases cited; Chamberlain v. Fuller, 59 Vt. 256, 9 Atl. 832; Wardner Co. v. Wittish, 77 Wis. 430, 46 N. W. 540; Gamill v. Johnson, 1 S. W. 610; Davis v. Parker, 103 Mass. 501; Holland v. Anderson, 38 Mo. 55; Kiffer v. Rodgers, 19 Miss. 32; Ward v. Speltz, 58 N. W. 426; Woodbridge v. DeWitt, 79 N. W. 506; Cole Bros. & Hart v. Williams, 11 N. W. 875.

*Lawrence & Murphy* and Honorable *Charles A. Pollock*, for respondent.

BIRDZELL, J. This is an action in equity to foreclose a chattel mortgage, and the appeal is from a judgment awarding foreclosure. The action is here for trial de novo, and, under the contentions of counsel, the case turns upon questions of fact. The following state-

ment will serve to present the decisive issues of fact as they appear in the pleadings and in the record. In the winter of 1915–1916 the defendant became interested in the purchase of a tractor. Two agents of the plaintiff, named Lee & Brost, solicited him at his farm for the purpose of making the sale. On or about February 11, 1916, the defendant gave an order for one Big Four "30" model C gas tractor, one set of extension wheels, one No. 50 8-bottom Emerson plow, 6 sod bottoms, and 1 500-gal. Big Four gas tank. The price agreed upon was $3,024, plus freight, an old engine, tank, pump, and hose which were taken in trade; the money consideration to be made payable in three notes as follows: One due October 1, 1916, for $1,200; one due October 1, 1917, for $1,100; one due October 1, 1918, for $724.

The order contains an express stipulation as follows: "It is a condition hereof, that the above-described machinery is purchased and sold without any warranty whatever. The purchaser acknowledges having received a copy of this order, and that no promises, representations, or agreements have been made except as herein containd."

This stipulation appearing on the back side of the order is contained in a separate paragraph near the end, there being considerable solid printing matter above it. At the time the order was signed, it was made in duplicate, and a copy was handed the defendant. He retained it for a few minutes, and upon the suggestion of one of the agents it was returned to him, to be left in town to facilitate checking the goods upon arrival. The goods were later shipped, and arrived at Napoleon in March. Upon their arrival the defendant went to the bank and executed the notes in accordance with the agreement, and also a chattel mortgage covering the same to secure the deferred payments. At the same time he signed a receipt for the goods, in which it was recited that the goods were received under and pursuant to the terms and conditions of the written order, and that the written order contained all agreements between the parties on account of the purchase. The defendant hired an engineer to operate the engine, but it gave more or less trouble during the season, and he claims that it would not develop the amount of power it was represented to be capable of developing, one of the principal defects being that the radiator did not work properly so that the engine heated when running. There

were also other defects of a serious character which were testified to by the plaintiff and an engineer who operated the engine for some time. In the fall of 1916 the defendant paid $500 on the first note, making payment to Brost. He testified that he had at first refused to make payment until the engine was put in running order as guaranteed, in reply to which, according to his testimony, Brost agreed to fix the engine and give him another style of radiator; that experts had ascertained that the radiator with which the engine was originally equipped did not have enough cooling capacity. He had used the tractor considerably that summer, plowing several hundred acres, and he testified that he paid the $500 because he had had some benefit from the engine, but that he declared at the time that he would hold back for extra expense due to the consumption of more gasolene than should have been necessary had the machine been as warranted, and for extra hired help. Sometime after this payment was made, in December, an action was begun by the plaintiff against the defendant for the recovery of the balance of the purchase price due according to the terms of the acceleration clause of the mortgage, and for the foreclosure of the mortgage. The summons and complaint in this action were served on January 19, 1917. Following the service of these papers, one Sayler, a collecting agent of the plaintiff, accompanied by Laney, the sheriff, called at the defendant's place apparently for the purpose of effecting a settlement. After some negotiations the defendant agreed to accept a reduction of $200 from the purchase-price obligations in settlement of what he contends was a claim for damages accrued to date on account of extra expenses incident to breaches of warranty in the past, and which the plaintiff claims was a settlement in full of all claims arising out of the transaction. At this settlement the defendant signed a written release as follows, the italicized part having been written by Sayler, the remainder being printed:

> *Napoleon, N. D. Jan. 20, 1917*

In consideration of *settlement and a discount of $200 for damage and lost time in full* and for one dollar to me in hand paid by Emerson-Brantingham Implement Company (Incorporated), of Rockford, Illinois, receipt whereof is hereby confessed, I or we, do hereby for-

ever release and discharge said company, its officers and agents, from any claim, demand and cause of action whatsoever from any cause arising, prior to the date hereof, and to release said company from all warranty and responsibility, express or implied, growing out of any transactions heretofore had.

.Witness my hand and seal,

John Busch  (Seal)

————— (Seal)

In presence of
  Geo Laney
  J. B. Sayler

It further appears that upon at least two occasions the defendant's expert made written reports concerning the condition of the engine, both of which were signed by the defendant. One of these reports is dated April 30, 1916, and states that the machine was working satisfactorily. The other is dated October 12, 1916, and recites that the machine had plowed some 400 acres; that the radiator was full of mud and slime; that the expert had cleaned the radiator and set the magneto; that the machine would work satisfactorily if it continued to cool; that Busch had agreed to report if the radiator did not continue to cool properly, and that he desired the privilege of exchanging the engine before spring of the next year.

The controverted questions of fact relate to the existence of a warranty at the time the machine was sold, which, in view of the stipulations in the written order, would not be available to the defendant unless the order were fraudulently obtained; and to the settlement made in January, 1917, whereby the defendant released all claims. The trial court found that the engine was sold to the defendant on representations and warranties, made by Brost & Lee, as to its construction, material, and efficiency; that the defendant had no knowledge of the printed stipulations contained in the order providing that there was no warranty; that the defendant did not read the order, and was unable to read it because of the fact that the agent Lee took it from him for the purpose of preventing him from reading it; and that the engine did not comply with the representations and warranties so made. The respondent does not seriously argue upon this

appeal that the foregoing findings are erroneous, and a careful examination of the testimony convinces us that these findings are amply supported by the evidence. It would serve no useful purpose to recite the evidence upon which our conclusions are based, for the record leaves little doubt that the plaintiff's sales agents represented that the tractor was in every way efficient and capable of operating at least eight plows; that a person need not be an expert to operate it; that the fuel cost would not exceed 40 cents per acre; and that it would furnish power enough to run a good sized separator for threshing. The evidence also establishes that the defendant was presented from ascertaining that he had signed an order which negatived all such warranties by being thrown off his guard, being told that the order did contain the warranties, and being prevented from reading it by having his copy taken from him on the pretext that it would be necessary to have it in town to check the goods upon arrival. Considering the simplicity of the description of the few items embraced in the order, and the ease with which a memorandum could have been made and left wherever it was needed, the act of the plaintiff's agents in taking from the defendant the copy of the order, manifestly intended for him, is a badge of fraud of a most significant character. This circumstance also tends strongly to discredit the testimony of the agent Brost in so far as it conflicts with that of the defendant, Busch, concerning the warranties. Lee did not testify. We therefore have no hesitancy in adopting the findings of the trial court relative to the existence of warranties and to the fraud in obtaining the order from the defendant so worded as to negative them.

Neither can there be any doubt that the engine failed to comply with the warranties, and that the defendant was put to considerable extra expense in operating it, for the testimony shows that the engine was at no time able to pull the number of plows it was warranted to pull and that the fuel consumption was considerably greater; that the radiator, without which the engine could not work successfully, was defective,—a fact which was recognized by the plaintiff itself, as it agreed to furnish a radiator of a different type.

The remaining controverted fact relating to the settlement obtained in January, 1917, remains for consideration. As we view the case,

the facts surrounding this settlement cannot be considered independently of the facts concerning the warranties. The evidence shows that the defendant was at all times objecting to the payment of the purchase price until the engine was made to comply with the warranties, and at the same time he was making a claim for the damages he had sustained by reason of the failure of the engine to perform as warranted during the period that he had actually used it. The defendant was apparently dealing with plaintiff's agents all of the time upon the supposition that the warranties claimed by him existed, and so far as the record shows nothing was done to change this impression. On the contrary, in response to his request for experts, experts were not sent until near the culmination of the transaction; and even at that time an expert was promised but not sent. By what we consider to be the weight of the testimony, it appears that the defendant, in entering into negotiations for the settlement, was under the impression that he was settling his claim for damages, and that he was still relying upon the plaintiff company to fulfil the warranties made by its agents. Sayler, the collector, had been to the defendant's place a number of times, and each time he was interested in obtaining payment of the defendant's note that was then due. The defendant had paid part and withheld the balance as compensation for damages, and on subsequent occasions Sayler had endeavored to obtain payment of the balance by offering inducements to the defendant, none of which were agreed to until after papers were served in the former action. Upon the occasion of the settlement in question, Laney, the sheriff, and Sayler, came to the defendant's place the morning after the papers had been served, and after an agreement was made, whereby the defendant was to have a $200 discount and the plaintiff was to furnish a new radiator to put the engine in working order, Sayler wrote out the release hereinbefore quoted, and gave it to the defendant to sign, stating that it was just a rceipt for the money that he would send into the company. The defendant did not read it, and did not understand that he was signing a release of all liability arising out of the transaction. The defendant's statement that he thought he was settling his damages is somewhat corroborated by Sayler's testimony, wherein the latter gives as a reason why the defendant did not take care of his notes, that it

was "because he thought he had a damage suit against the company." And again he said, referring to the occasion when the settlement was made: "I sat on one side of the table and he sat on the other side in the dining room, and we were there probably three fourths of an hour before we arrived at a basic settlement. The matter of the radiator did not stand in the way at that time. It was the money consideration. I had offered him a radiator the same as before, but he wanted more money than I was willing to pay *for the damage he claimed he was put to.*"

So, according to the testimony both of the defendant and of the agent of the plaintiff, the settlement involved the defendant's claim for money damages. Furthermore, there is no dispute concerning the fact that the plaintiffs agreed to replace the radiator and to put the machine in working order, and this is not mentioned in the release. The defendant testifies concerning the radiator, that he was to get the new radiator free, and that he inquired as to who was going to put the radiator on, and was told that anybody could put it on, and that if he had trouble to make it work he could send for an expert. Also that defendant's agent warranted that the machine would have all kinds of power, and would give no further trouble after the radiator was exchanged. The radiator was furnished; the defendant put it on, but he had no success with the machine. He sent for an expert and was told by Brost that he would have an expert sent inside of three days, but the expert was never sent.

It is significant, too, that the written portion of the release which the defendant states he did read states expressly that the settlement was "for damage and lost time in full." This statement in the written portion coincides with the testimony, and would naturally lead one reading it to suppose that nothing else was embraced in the settlement. In fact, under the testimony of both the defendant and the plaintiff's agent, Sayler, if the release stood in the way of defendant's claim for breach of warranty, it could well be made to conform to the mutual intention, for it does not state the other portion of the agreement with reference to the radiator, and it includes matters which, under the testimony of both witnesses, were not agreed upon at all. In these circumstances, the printed portion of the release is not so far controlling as to cut off the defendant's rights upon the warranties.

There is no testimony relating to the other articles purchased at the same time, and it appears that during the time defendant had the engine he obtained some benefit from its use and sustained some damages. He consented to settle his damages for $200, and we know of no reason why this settlement, in so far as it pertains to his damages, should not be sustained. The price of the engine was $2,800. The defendant traded in materials valued at about $600 and paid in cash $1,068.60. In the pleadings no relief is asked as to the machinery traded in. The evidence shows that the engine was not placed in working order as required to fulfil the warranties. It also shows that the defendant was to have an opportunity to exchange it if it did not work satisfactorily. He was induced to keep it, and did keep it, relying upon the promises of the plaintiff's agents from time to time that they would put it in good condition. They have not only failed to this, but they have also failed to fulfil their own promise to send an expert. In these circumstances it is difficult to adjust the equities between the parties. Justice requires, however, that the contract, in so far as it relates to the tractor, be rescinded, and that the obligations of the defendant as represented by the purchase price of the tractor be reduced or canceled. The evidence on the subject of the benefits received by the defendant from the use of the tractor is in such condition that an intelligent finding cannot be made thereon. We therefore find it necessary to remand the case to the district court, with directions to allow the taking of additional testimony upon this one subject upon the plaintiff's application therefor.

The judgment of this court is: (1) That the sale of the tractor be rescinded; (2) that the notes and securities of the plaintiff be reduced to the extent of $2,800 and the accrued interest thereon; (3) that the defendant recover of the plaintiff $200 in settlement of his claim for damages and loss of time incident to breaches of warranty prior to the settlement; (4) that the defendant have judgment for the recovery of $1,068.60 paid, with the legal rate of interest from the time of such payment; (5) that the plaintiff have judgment against the defendant for the reasonable value of the benefits derived by the use of the tractor during the time it was in his possession, and that, there be a new trial to determine the amount thereof; (6) that the transaction, except

as hereinbefore altered, shall stand, the plaintiff having the right to avail itself of the securities in its hands to enforce payment of any amount due it under the terms of this judgment; and (7) that the items entering into the judgment may be offset one against the other.

The appellant will recover costs upon this appeal.

CHRISTIANSON, Ch. J., and BRONSON, J., concur.

GRACE, J. (concurring in part and dissenting in part). I concur in the opinion as written by Justice Birdzell, that the sale of the tractor be adjudged rescinded; that the notes and securities be reduced $2,800 and interest; that the defendant should recover $200 damages and $1,068.60 paid, with legal interest thereon.

I do not agree that the plaintiff should have judgment against defendant for the reasonable value of the benefits derived from the use of the tractor during the time of the defendant's possession thereof, and no new trial should be had on that issue, nor at all.

There being fraud in the procuring of the order in the manner as found by the trial court, and as clearly appears from the opinion of Justice Birdzell, the entire order and contract was void and should be adjudged rescinded. The plaintiff, under the facts in this case, is entitled to no benefits and should not be permitted to recover for any, and is entitled to no relief nor to any recovery whatever.

ROBINSON, J., concurs.